## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Cargill, Incorporated, and | ) | CASE NUMBER: _____ |
| | ) | |
| Cargill Financial Services International, Inc., | ) | **COMPLAINT** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HF Chlor-Alkali, LLC, | ) | |
| | ) | |
| Defendant. | | |

_____

Plaintiffs Cargill, Incorporated and Cargill Financial Services International, Inc., for their Complaint against defendant HF Chlor-Alkali, LLC, state and allege as follows:

### THE PARTIES

1.      Plaintiff Cargill, Incorporated ("**Cargill**") is a corporation organized and existing under Delaware law with a principal place of business in Hopkins, Minnesota.

2.      Plaintiff Cargill Financial Services International, Inc. ("**CFSI**") is a corporation organized and existing under Delaware law with a principal place of business in Hopkins, Minnesota. CFSI is a wholly-owned subsidiary of Cargill.

3.      Defendant HF Chlor-Alkali, LLC ("**HFCA**"), is a limited liability company organized and existing under the laws of the State of Iowa with offices at 9307 East 56th Street, Indianapolis, Indiana 46216.

1

4.   The members of HFCA and the states of which they are citizens are:

| Member | State of Citizenship |
|---|---|
| Timothy M. Harris | Residence Address:  4434 N Post Road, Indianapolis, Indiana 46226-4221 |
| Joseph E. Ford | Residence Address:  222 W Fourth Street, Winchester, Indiana 47394-110 |
| William J. Huff, II | Residence Address:  1026 Morning Sun Lane, Beech Grove, Indiana 46107-2425 |
| Scott G. Paris | Residence Address:  99 2nd Ave SW, Apt 2G, Carmel, Indiana 46032-2019 |
| Lee G. Polk | Residence Address:  22721 Sherman Road, Steger, Illinois 60475-5948 |
| Bankers Life and Casualty Company | State of Incorporation:  Illinois<br>Principal Place of Business:  4434 W. Lawrence Avenue, Chicago, Illinois 60630 |
| Washington National Insurance Company | State of Incorporation:  Indiana<br>Principal Place of Business:  11825 N Pennsylvania Street, Carmel, Indiana 46032 |
| Colonial Penn Life Insurance Company | State of Incorporation:  Pennsylvania<br>Principal Place of Business:  399 Market Street, Philadelphia, Pennsylvania 19181 |

**JURISDICTION AND VENUE**

5.      This Court has personal jurisdiction over HFCA because HCFA transacts business in the state of Minnesota and consented to the jurisdiction of this Court in each of the two the contracts, defined below as the "Reimbursement Agreement" and the "Prepayment Agreement," respectively, that are the subjects of this lawsuit.

6.     The "Reimbursement Agreement" between HFCA and Cargill, as the successor in interest to U.S. Bank National Association, at Section 8.7(b), states that "[e]ach of the parties hereto irrevocably and unconditionally submits to the jurisdiction of [this Court] and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in [this Court, to the fullest extent permitted by applicable law]."

7.     The "Prepayment Agreement" between HFCA and CFSI, at Section 7.05, states that the parties agree to "submit to the exclusive jurisdiction of any federal court or Minnesota State Court sitting in Minneapolis or St. Paul, Minnesota for the purposes of any suit, action or other proceeding arising therefrom. . . ."

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Cargill and CFSI are citizens of different states than HFCA and each of its members and the amount in controversy exceeds $75,000.00.

9.     Venue is proper in this Court because: (a) the "Reimbursement Agreement," at Sections 8.7(a) and (c), expressly invokes Minnesota law as the governing law, and provides that the parties irrevocably and unconditionally waive any objection to venue in this Court; and (b) the "Prepayment Agreement," at Section 7.05, expressly invokes Minnesota law as the governing law, and provides that the parties waive any objections to the venue of this Court.

**FACTS**

10.     HFCA was formed in 2012 for the purposes of constructing, owning and operating a chlor-alkali facility to produce bleach, caustic soda and hydrochloric acid (the "**Facility**").

11.     Cargill and CFSI entered various agreements with HFCA, as further described below, pursuant to which the parties contemplated that, among other things: (a) Cargill and CFSI would provide financing assistance to HFCA to fund construction of the Facility; (b) the Facility would be built upon land owned by Cargill and leased to HFCA; and (c) Cargill would purchase from HFCA the bleach, caustic soda and hydrochloric acid produced at the Facility.

**I.     CARGILL AND CFSI HAVE PROVIDED FINANCING ASSISTANCE TO HFCA, AND HFCA HAS DEFAULTED ON ITS REPAYMENT OBLIGATIONS.**

12.     HFCA obtained capital to fund the construction of the Facility in part via bond financing through the Iowa Finance Authority in the principal amount of $80,000,000, which bond financing was financially supported by Cargill. In addition, CFSI provided production advance funding in the aggregate amount of $52,350,000 (with a current principal balance of $48,350,000) to HFCA. HFCA now has defaulted on its obligations to repay these amounts.

4

A.    **Cargill has enabled HFCA to obtain bond financing by undertaking indirect liability for HCFA's associated repayment obligations.**

13.    The Iowa Finance Authority, an agency of the State of Iowa, issued its Midwestern Disaster Area Revenue Bonds (HF Chlor-Alkali, LLC Project) Series 2012 in the aggregate principal amount of $80,000,000.00 (the "**IFA Bonds**").

14.    The IFA Bonds were issued pursuant to an Indenture of Trust dated as of December 1, 2012 (the "**IFA Indenture**"), between the Iowa Finance Authority and The Bank of New York Mellon Trust Company, N.A., as trustee for the purchasers of the IFA Bonds (the "**Trustee**").

15.    The Iowa Finance Authority and HFCA entered into a Loan Agreement dated as of December 1, 2012 (the "**IFA Loan Agreement**"), pursuant to which the Iowa Finance Authority loaned the proceeds of the IFA Bonds sale to HFCA to fund, in part, the construction of the Facility. Under the IFA Indenture, the Iowa Finance Authority pledged certain of its interests under the IFA Loan Agreement to the Trustee as security for the benefit of the purchasers of the IFA Bonds.

16.    Section 5.13 of the IFA Loan Agreement required that HFCA cause an acceptable third-party to provide "an irrevocable, transferable, direct pay letter of credit" in favor of the Trustee for the benefit of the purchasers of the IFA Bonds. The IFA Indenture specified that U.S. Bank National Association ("**US Bank**") would provide the required letter of credit. US Bank issued its irrevocable letter of credit dated December 28, 2012, in the amount of $81,911,233.00 for the account of HFCA and for the benefit of the Trustee (as amended and extended, the "**Letter of Credit**").

5

17.    HFCA and US Bank entered into a Letter of Credit and Reimbursement Agreement dated as of December 28, 2012 (as amended, the "**Reimbursement Agreement**"), under which US Bank agreed to provide the Letter of Credit and HFCA agreed to reimburse US Bank for all amounts drawn under the Letter of Credit, together with interest thereon, and to pay US Bank certain fees and expenses and other amounts. HFCA and US Bank also entered into a Security Agreement dated as of December 28, 2012 (the "**US Bank Security Agreement**"), under which HFCA granted a security interest in the "Collateral" described therein (the "**US Bank Collateral**") to US Bank to secure HFCA's obligations under the Reimbursement Agreement.

18.    Cargill and US Bank entered into a Put Agreement dated as of December 28, 2012 (as amended, the "**US Bank Put**"), under which Cargill agreed that it would purchase the "Specified Obligations" as defined therein owed by HFCA to US Bank under the Reimbursement Agreement under certain conditions.

19.    The agreements described in the foregoing paragraphs 13 through 18 and related documents created a financing structure (the "**IFA Bond Financing**") under which the IFA Bonds were collateralized by the Letter of Credit, and US Bank's rights to be repaid for issuing and honoring the Letter of Credit were secured by a security interest in the US Bank Collateral and US Bank's right to require, via the Put Agreement, that Cargill pay US Bank any unpaid amounts due from HFCA under the Reimbursement Agreement.

20.    CFSI, US Bank and HFCA had established a controlled deposit account at US Bank (the "**Blocked Account**") that was funded for the purpose of making interest

6

payments on the IFA Bond Financing, and the Prepayment Financing described below, for the period September 2015 through December 31, 2015.

**B.      HFCA has defaulted on the IFA Bond Financing.**

21.      HFCA was obligated to make an interest payment in the amount of $12,145.56 (the "**Bond Interest Payment**") to the Trustee on March 1, 2016, under Section 4.2(a) of the IFA Loan Agreement and Section 6.1 of the IFA Indenture. HFCA failed and refused to make the Bond Interest Payment. The Trustee drew the amount of the Bond Interest Payment under the Letter of Credit. HFCA failed and refused to reimburse US Bank in the amount of the Bond Interest Payment drawn under the Letter of Credit and related fees as required under the Reimbursement Agreement.

22.      As a result of HFCA's failure to reimburse US Bank for the amount of the Bond Interest Payment and related fees, CFSI authorized the release of funds in the amount of $12,145.56 from the Blocked Account to reimburse US Bank for the amounts due under the Reimbursement Agreement.

23.      HFCA was obligated to pay a quarterly fee for the Letter of Credit in the amount of $1,098,975.71 to US Bank on March 1, 2016, under Section 2.6(a) of the Reimbursement Agreement. HFCA failed and refused to pay that quarterly fee. On April 15, 2016, CFSI authorized the release of the remaining funds in the Blocked Account, totaling $936,623.77, to US Bank for application to the Letter of Credit fee that was due from HFCA. After the application of the funds from the Blocked Account, HFCA owed the remaining balance of the Letter of Credit fee in the amount of $162,351.94 to US Bank under the Reimbursement Agreement.

24.     HFCA was obligated to pay another quarterly fee for the Letter of Credit in the amount of $1,098,975.71 to US Bank on June 1, 2016, under Section 2.6(a) of the Reimbursement Agreement. HFCA failed and refused to pay that quarterly fee.

25.     HFCA was obligated to provide audited financial statements and related materials, for its fiscal year ended December 31, 2015, to US Bank on or before March 30, 2016 under Section 5.1(a) of the Reimbursement Agreement. HFCA failed and refused to provide the required audited financial statements to US Bank.

26.     HFCA further defaulted under the Reimbursement Agreement by, among other things, allowing mechanic's liens in excess of $18,000,000 to be filed against the Facility as described below.

27.     Under Section 7.2(e) of the Reimbursement Agreement, HFCA has expressly consented to the appointment of a receiver to manage, control and liquidate HFCA's assets, including the Facility, should HFCA fail to pay any amounts owing under the Reimbursement Agreement.

28.     As a result of HFCA's aforementioned defaults under the Reimbursement Agreement, US Bank declared the existence of Events of Default under the Reimbursement Agreement. Under Section 7.2(a) of the Reimbursement Agreement, US Bank provided notice to the Trustee on July 19, 2016 of the Events of Default under the Reimbursement Agreement, which caused the Trustee to accelerate the principal and accrued interest of the IFA Bonds in accordance with the terms of the IFA Indenture.

29.     In response to the notice received from US Bank and in accordance with Section 9.2(a) of the IFA Indenture, the Trustee declared the IFA Bonds to be immediately due and payable.

30.     The Trustee drew the amount of $80,051,125.68 under the Letter of Credit on July 21, 2016 (the "**Trustee Draw**"). As a result of the Trustee Draw under the Letter of Credit, HFCA was obligated to reimburse US Bank for the amount of the Trustee Draw and related administrative fees and other amounts due under the Reimbursement Agreement or US Bank would seek reimbursement from Cargill for those amounts, by exercising the US Bank Put.

31.     On July 21, 2016, US Bank exercised the US Bank Put and demanded that Cargill purchase Specified Obligations in the aggregate amount of $81,447,000.12 under the US Bank Put. Cargill paid US Bank the amount of $81,447,000.12 on July 22, 2016 (the "**Cargill Put Payment**"), which constitutes the entire amount of the bonds outstanding,  the outstanding Letter of Credit fees, accrued interest, administrative fees and legal fees and expenses.

32.     Upon receipt of the Cargill Put Payment, US Bank assigned its rights and remedies against HFCA under the Reimbursement Agreement and related collateral documents to Cargill. The assignment of US Bank's rights and remedies to Cargill did not waive, alter, satisfy or discharge any of HFCA's obligations under the Reimbursement Agreement and related collateral documents. Cargill is legally entitled to enforce the Reimbursement Agreement and related collateral documents against HFCA

9

and to recover from HFCA the amount of the Cargill Put Payment and other amounts due from HFCA under the Reimbursement Agreement.

33.    As of July 22, 2016, HFCA owes the aggregate amount of in excess of $81,447,000.12 to Cargill under the Reimbursement Agreement and related documents, consisting of:

a.  The amount of the Trustee Draw under the Letter of Credit totaling $80,051,125.68, due under Section 2.2 of the Reimbursement Agreement;

b.  The amount of the administrative fees totaling $100,063.91 due under Section 2.6(b) of the Reimbursement Agreement as a result of the Trustee Draw;

c.  The remaining balance of the Letter of Credit fee in the amount of $162,351.94 due on March 1, 2016, under Section 2.6(a) of the Reimbursement Agreement;

d.  The Letter of Credit fee in the amount of $1,098,975.71 due on June 1, 2016, under Section 2.6(a) of the Reimbursement Agreement;

e.  Legal fees and expenses in the amount of $15,767.75 under Section 8.5(a) of the Reimbursement Agreement; and

f.  Interest that accrued on the foregoing amounts through July 22, 2016 in the amount of $18,715.13 under Section 2.3 of the Reimbursement Agreement.

From and after July 22, 2016, interest continues to accrue on the amounts specified in the foregoing subparagraphs a through e under Section 2.3 of the Reimbursement Agreement.

10

### C.    CFSI has advanced $52,350,000 to HFCA under the Prepayment Agreement.

34.    Cargill and HFCA entered into a Chemical Purchase and Supply Agreement dated as of June 24, 2013, as clarified by an Addendum to Chemical Purchase and Supply Agreement executed on behalf of Cargill on July 23, 2015 (collectively, the "**Chemical Supply Agreement**"), under which Cargill agreed to purchase substantially all of the "Products" as defined therein to be produced at the Facility during a period of ten years after the Facility achieved the "Commercial Operations Date" as defined therein.

35.    CFSI and HFCA entered into a Prepayment Agreement dated as of December 28, 2012 (as amended, the "**Prepayment Agreement**"), under which CFSI advanced to HFCA the principal amount of $52,350,000.00 to be used to build and operate the Facility (the "**Prepayment**"). HFCA is obligated to repay the principal amount of the Prepayment, together with interest thereon, certain administrative fees and other amounts due in accordance with the terms of the Prepayment Agreement.

36.    HFCA, Cargill and CFSI entered into an Assignment Agreement dated as of December 28, 2012 (as amended, the "**CFSI Assignment Agreement**"), under which HFCA assigned to CFSI its rights to a portion of the payments to become due from Cargill under the Chemical Supply Agreement to collateralize HFCA's obligations to repay CFSI under the Prepayment Agreement.

37.    HFCA's obligations to CFSI under the Prepayment Agreement also are collateralized by a Security Agreement dated July 2, 2013 (the "**CFSI Security**

11

**Agreement**"), under which HFCA granted a security interest in the "Collateral" as defined therein (the "**CFSI Collateral**") to CFSI.

38.     The agreements described in the foregoing paragraphs 34 through 37 and related documents created a financing structure (the "**CFSI Prepayment Financing**") under which CFSI made a direct advance to HFCA, the repayment of which is secured by an assignment of a portion of the payments to be made by Cargill for the purchase of the Products produced at the Facility and a security interest in the CFSI Collateral.

      **D.     HFCA has defaulted under the Prepayment Agreement.**

39.     HFCA is obligated to make quarterly payments of the interest that has accrued on the unrepaid principal balance of the Prepayment to CFSI under Section 2.04(a) of the Prepayment Agreement on the "Payment Dates" as defined therein. In addition, HFCA is obligated to make quarterly payments of "Administrative Fees" to CFSI on the Payment Dates under Section 2.14 of the Prepayment Agreement.

40.     HFCA has failed and refused to make the following payments of interest and Administrative Fees that were due to CFSI on the following Payment Dates:

**TABLE 1**

| Payment Date | Interest | Administrative Fees | Outstanding Due |
|---|---|---|---|
| Dec. 31, 2015 | $1,060,302.61 | $30,890.28 | $1,091,192.89 |
| March 31, 2016 | $1,082,754.20 | $30,554.51 | $1,113,308.71 |
| June 30, 2016 | $1,085,785.21 | $30,554.51 | $1,116,339.72 |
| **TOTALS:** | $3,228,842.02 | $91,999.30 | $3,320,841.32 |

From July 1, 2016 until September 30, 2016, interest will continue to accrue at the rate of $11,935.73 per day, and Administrative Fees will continue to accrue at the rate of $335.76 per day. After September 30, 2016, the "Interest Rate" as defined in the Prepayment Agreement will be reset on a calendar-quarter basis and interest will continue to accrue at the applicable Interest Rate.

41.    The "Outstanding Due" for each Payment Date set forth in the foregoing Table 1 is the aggregate of the interest and the Administrative Fees due on that Payment Date. Under Section 2.13 of the Prepayment Agreement, HFCA is obligated to pay "Default Interest" as defined therein that accrues on the amount of the Outstanding Due due each Payment Date from the respective Payment Date until the Outstanding Due is paid. The Default Interest that has accrued through June 30, 2016, on the Outstanding Due set forth in the foregoing Table 1 totals $105,590.89 in the aggregate. From and after July 1, 2016, Default Interest continues to accrue on the Outstanding Due at the interest rate specified in Section 2.13 of the Prepayment Agreement, which interest rate varies on a daily basis.

42.    HFCA's failure to make the interest, Administrative Fees and Default Interest payments due on each of the respective Payment Dates set forth in the foregoing Table 1 constitutes a default under the Prepayment Agreement, and HFCA's failure to cure that default by making the required interest, Administrative Fees and Default Interest payments within ten days after the respective Payment Date constitutes an "Event of Default" as defined in Section 6.01(a) of the Prepayment Agreement.

43.     Under Section 2.04(b) of the Prepayment Agreement, HFCA was obligated to make a principal payment in the amount of $2,417,500.00 to CFSI on June 30, 2016.

44.     HFCA has failed and refused to make the principal payment due on June 30, 2016, under the Prepayment Agreement.

45.     HFCA's failure to make the principal payment due on June 30, 2016 constitutes a default under the Prepayment Agreement, and HFCA's failure to cure that default within ten days constitutes an "Event of Default" as defined in the Prepayment Agreement.

46.     Section 5.01(g)(ii) of the Prepayment Agreement requires that HFCA provide to CFSI annual audited financial statements and audit reports within 120 days after the end of each Fiscal Year. HFCA's audited financial statements and audit reports for the Fiscal Year ending December 31, 2015, were due on or before April 29, 2016.

47.     HFCA has failed and refused to provide its audited financial statements and audit reports for the Fiscal Year ending December 31, 2015, to CFSI. HFCA has advised CFSI that it needs to obtain additional capital in order to ensure that HFCA can become solvent, that until such refinancing occurs HFCA could not obtain a "clean" audit letter, and that the refinancing had not been completed as of March 2016. As of the date of this Complaint, HFCA had not completed a refinancing and had not provided its audited financial statements and audit reports for the Fiscal Year ending December 31, 2015 to CFSI.

48.     By letter dated May 10, 2016, CFSI, through counsel, provided written notice to HFCA that its failure to provide its audited financial statements and audit

reports for the Fiscal Year ending December 31, 2015, to CFSI constituted a default under the Prepayment Agreement and demanded that HFCA cure that default within 30 days, the time required under Section 6.01(b) of the Prepayment Agreement. HFCA has failed and refused to cure that default within the required time period, which constitutes an "Event of Default" as defined in Section 6.01(b) of the Prepayment Agreement.

49.     Section 6.01 of the Prepayment Agreement provides that, upon the occurrence of an Event of Default under the Prepayment Agreement, CFSI may declare, by notice to HFCA, the entire principal amount, together with any other amounts accrued or payable thereunder, immediately due and payable. By letter dated July 21, 2016, CFSI, through counsel, provided written notice to HFCA declaring all amounts due under the Prepayment Agreement to be immediately due and payable. As a result, the entire principal amount and all other amounts due under the Prepayment Agreement are accelerated and are immediately due and payable.

50.     Section 7.02(a) of the Prepayment Agreement requires HFCA to pay CFSI "all attorneys' and other fees and expenses incurred in respect of" CFSI enforcing the Prepayment Agreement to collect the amounts due from HFCA thereunder.

51.     As of June 30, 2016, HFCA owes the following amounts to CFSI under the Prepayment Agreement:

    a.   The unpaid principal balance of the Prepayment in the amount of $48,350,000.00;

    b.   The unpaid interest in the aggregate amount of $3,228,842.02;

    c.   The unpaid Administrative Fees in the aggregate amount of $91,999.30;

15

     d.   The unpaid Default Interest in the aggregate amount of $105,590.89; and

     e.   The attorneys' fees and other costs incurred by CFSI.

From and after July 1, 2016, the amounts due to CFSI as set forth in the foregoing subparagraphs b through d will continue to increase as set forth in the Prepayment Agreement.

## II.   THE PARTIES ENTERED INTO ANCILLARY AND OTHER AGREEMENTS REGARDING THE FACILITY.

### A.   The Ancillary Agreements.

52.   The real property upon which the Facility is located and is being constructed is owned by Cargill, and is leased to HFCA under a Lease Agreement effective as of June 24, 2013 (the "**Lease**"), having a stated term of 50 years. HFCA is in default under the Lease for, among other things: (a) HFCA's failure to ensure that the Facility is operational by January 1, 2016, as is required under Section 5.02 of the Lease; and (b) HFCA's failure to indemnify, defend and hold Cargill harmless against claims, including with regard to the mechanic's lien claims against the Facility discussed below, as required under Section 13.01 of the Lease.

53.   Cargill and HFCA are parties to the Chemical Supply Agreement. HFCA is in default under the Chemical Supply Agreement.

54.   Cargill and HFCA are parties to a Process Water Service Agreement effective as of June 24, 2013 (the "**Water Agreement**"), under which Cargill sells the water used in the Facility to HFCA. HFCA is in default under the Water Agreement.

55.     Cargill and HFCA are parties to a Process Waste Water Treatment Services Agreement effective as of June 24, 2013 (the "**Waste Water Agreement**"), under which Cargill receives and treats the waste water generated by the Facility. HFCA is in default under the Waste Water Agreement.

56.     Cargill and HFCA are parties to a Site Security Services Agreement effective as of June 24, 2013 (the "**Security Services Agreement**," and together with the Lease, the Water Agreement and the Waste Water Agreement, the "**Ancillary Agreements**"), under which Cargill provides security services for the Facility. HFCA is in default under the Security Services Agreement.

### B.     The Other Cargill Vendor Agreements.

57.     Cargill and HFCA are parties to a Base Contract for Sale and Purchase of Natural Gas dated as of October 17, 2014 (the "**Natural Gas Contract**"), under which Cargill sells natural gas to HFCA for use in the Facility.  HFCA is in default under the Natural Gas Contract.

58.     Cargill and HFCA are parties to a Product Supply Agreement dated as of February 7, 2014 (the "**Salt Agreement**," and together with the Natural Gas Agreement, the "**Other Cargill Vendor Agreements**"), under which Cargill sells salt to HFCA for use in the Facility. HFCA is in default under the Salt Agreement.

### C.     Contractual dispute resolution process.

59.     The existence and amounts of HFCA's breaches of and defaults under the Ancillary Agreements and the Other Cargill Vendor Agreements, to the extent disputed

by HFCA, are subject to the dispute resolution processes set forth in the respective agreements and are not at issue in this lawsuit.

## III.  HFCA HAS SERIOUSLY MISMANAGED THE FACILITY.

### A.    The Facility contains numerous design and construction defects.

60.    HFCA and Conve & AVS, Inc. ("**Conve**") entered into a Contract Between HF Chlor-Alkali, LLC and Conve & AVS Inc. for the Design, Supply and Construction of a Chlor-Alkali Production Plant with Bipolar Membrane Electrolyzer Technology to be Constructed, Erected and Installed in Eddyville, Iowa USA (the "**Conve Construction Contract**"), pursuant to which Conve agreed to design and build the Facility and to prepare it for operation.

61.    The Conve Construction Contract was effective as of May 17, 2013. The Conve Construction Contract, at Annex 7, projected that the Facility would be constructed and accepted by HFCA by November 2014. HFCA anticipated that the Facility would be operational by January 15, 2015, which was the expected Commercial Operations Date set forth in Section III.A of the Chemical Supply Agreement.

62.    Construction commenced on the Facility in August 2013. HFCA encountered numerous design defects, construction delays and cost overruns in the construction of the Facility. HFCA alleges that Conve and various subcontractors are the primary causes of those defects, delays and cost overruns. HFCA and Conve are involved in arbitration proceedings relating to the Conve Construction Contract and the design and construction of the Facility.

63.    In the spring of 2015, the Facility was still far from having been completed. HFCA requested that KBR, Inc. ("**KBR**"), a global technology, engineering, procurement and construction company, provide it with a high-level objective analysis of the status of the Facility. KBR visited the Facility in April 2015. KBR's written evaluation of the status of the Facility identified, among others, the following general areas of concern:

a.  General site safety and housekeeping;

b.  Lack of presence of a visible safety director;

c.  Lack of structural steel/equipment grounding in all areas;

d.  Bolts missing out of steel structures in various areas; and

e.  The absence of tank heaters.

KBR estimated that mechanical completion of the Facility would require 12-15 weeks, with a startup of the Facility six to eight weeks later, i.e., as late as November 2015.

**B.     HFCA failed to make the Facility fully operational.**

64.    Despite the fact construction on the Facility began nearly three years ago, the Facility is still not fully operational.

65.    In late 2015, the Facility began producing at a limited capacity.

66.    As of the date of this Complaint, the Facility operates only at 28% of full capacity.

67.    HFCA has represented to Cargill that it does not have the financial resources to complete the project to make the Facility fully operational.

**C.      Acid Spill.**

68.      On December 17, 2015, there was a spill of hazardous substance at the Facility (the "**Acid Spill**").

69.      During the Acid Spill, approximately 30,000 gallons of hydrochloric acid was spilled and migrated offsite in a vapor cloud. Hydrochloric acid is a hazardous substance.

70.      The Acid Spill caused six individuals to be sent to the hospital for observation.

71.      The Acid Spill was caused by negligence and mismanagement at the Facility.

72.      As a result of continued negligence and mismanagement by HFCA, the Facility continues to emit toxic chemicals in the atmosphere that surrounds the Facility.

73.      HFCA does not have the financial resources to ensure that the Facility will be operated in a safe manner.

**D.      HFCA has permitted over $18 million in mechanic's liens to be filed of record against the Facility.[1]**

74.      HFCA has permitted more than $18,000,000 in mechanic's liens to be filed against the Facility that remain unsatisfied. Two lien claimants have initiated two separate foreclosure actions in Iowa. To the extent valid and enforceable, those

---

[1] The validity and the amounts of the mechanic's liens filed in Iowa, outlined in this Complaint, are subject to dispute. Cargill and CFSI reserve all rights with respect to these mechanic's liens.

mechanic's lien amounts directly threaten Cargill's ownership of the real property upon which the Facility is located and that is leased to HFCA.

75.     Winger Contracting Company filed two mechanic's liens against the Facility in the amounts of $3,596,359.34 and $139,421.16 on June 11, 2015 and October 28, 2015, respectively.

76.     In addition to the Winger Contracting Company's mechanic's liens, 19 other parties have filed mechanic's liens aggregating in excess of $14,000,000 against the Facility, including mechanic's liens aggregating in excess of $8,000,000 that were filed of record by nine parties during the months of March, April and May 2016 alone.

77.     On September 8, 2015, Winger Contracting Company commenced a mechanic's lien foreclosure action against Cargill, HFCA and others captioned *Winger Contracting Company v. Cargill, Incorporated, et al,* Case Number EQEQ009184, presently pending in the Iowa District Court in and for Monroe County, Iowa.

78.     On May 12, 2016, Tracer Construction, LLC commenced a mechanic's lien foreclosure action against Cargill, HFCA and others captioned *Tracer Construction, LLC v. Cargill, Incorporated, et al,* Case Number EQEQ009228, presently pending in the Iowa District Court in and for Monroe County, Iowa, based upon a mechanic's lien in the amount of $1,170,017.50 that it filed of record on March 22, 2016.

79.     HFCA, through its counsel, has advised Cargill that HFCA does not intend to contest at least four of the mechanic's liens aggregating in excess of $1,300,000.

80.     HFCA has failed and refused to bond over, satisfy or otherwise discharge the outstanding mechanic's liens that have been filed of record against the Facility.

21

**E.      HFCA is insolvent.**

81.      HFCA is, and at least since January 2016 has been, insolvent under any commonly accepted definition of insolvency.

82.      Since January 2016, HFCA has repeatedly stated to Cargill and CFSI that it needed to obtain additional capital in order to become solvent and complete the construction to allow the Facility to become fully operational. HFCA has not completed a refinancing or otherwise obtained the additional capital.

83.      HFCA is generally not paying its debts as they become due, as is illustrated by, among other things:

    a.  HFCA's failure to pay the approximately $81,000,000 that is due under the Reimbursement Agreement;

    b.  HFCA's failure to pay the approximately $51,000,000 that is due under the Prepayment Agreement;

    c.  HFCA's failure to pay amounts due under the Ancillary Agreements;

    d.  HFCA's failure to pay amounts due under the Other Vendor Agreements;

    e.  HFCA's failure to pay the approximately $18,000,000 that is claimed by the parties that have filed mechanic's liens against the Facility. In sum, HFCA currently owes its creditors, including Cargill and CFSI, the total amount of approximately $150,000,000. This amount does not include other creditors of HFCA; and

    f.  HFCA's inability to raise the additional capital that it asserts that it needs to complete the construction and commencement of operations of the Facility.

## COUNT I
## BREACH OF CONTRACT – REIMBURSEMENT AGREEMENT

84.     Plaintiffs restate and reallege all prior paragraphs of this Complaint as if fully set forth by this reference.

85.     Under the Reimbursement Agreement, HFCA promised to pay to US Bank all amounts drawn against US Bank under the Letter of Credit, together with interest thereon and certain fees, expenses, and other amounts.

86.     Due to HFCA's failure and refusal to make bond repayments to the Trustee as required under the IFA Bond Financing arrangement, the Trustee initiated a draw on the Letter of Credit, causing US Bank to pay the Trustee.

87.     Pursuant to the US Bank Put, Cargill had to satisfy US Bank in the amount of $81,447,000.12.

88.     US Bank has assigned its claims against HFCA under the Reimbursement Agreement to Cargill.

89.     Cargill is legally entitled to enforce the Reimbursement Agreement and related collateral documents against HFCA and to recover from HFCA the amount of the Cargill Put Payment and other amounts due from HFCA under the Reimbursement Agreement.

90.     HFCA has breached the Reimbursement Agreement by failing to pay the amounts due thereunder.

91.     Under Section 7.2(e) of the Reimbursement Agreement, HFCA has expressly consented to the appointment of a receiver to manage, control and liquidate the

23

Facility should HFCA fail to pay any amounts owing under the Reimbursement Agreement.

92.     Because HFCA is in default under the Reimbursement Agreement, Cargill is entitled to the appointment of a receiver to manage and control the Facility as consented to by HFCA.

93.     As of July 22, 2016, HFCA owes the aggregate amount of $81,447,000.12 to Cargill under the Reimbursement Agreement and related documents. From and after July 22, 2016, interest continues to accrue on this amount at the rate specified in Section 2.3 of the Reimbursement Agreement.

## COUNT II
## BREACH OF CONTRACT – PREPAYMENT AGREEMENT

94.     Plaintiffs restate and reallege all prior paragraphs of this Complaint as if fully set forth by this reference.

95.     The Prepayment Agreement is a valid and enforceable contract between CFSI and HFCA.

96.     Under the Prepayment Agreement, CFSI advanced $52,350,000.00 to HFCA. CFSI has performed all of its obligations under the Prepayment Agreement.

97.     Under the Prepayment Agreement, HFCA promised to repay the principal amount of the Prepayment, together with interest thereon, certain administrative fees and other amounts due in accordance with its terms.

98.     HFCA breached the Prepayment Agreement by failing to make payments for principal, interest, and other amounts that have come due thereunder.

99.    HFCA's failure to pay the amounts that have come due under the Prepayment Agreement constitute an Event of Default thereunder.

100.    CFSI has properly accelerated the entire principal balance as permitted under the Prepayment Agreement upon an Event of Default.

101.    As of June 30, 2016, HFCA owes the following amounts to CFSI under the Prepayment Agreement:

a.    The unpaid principal balance of the Prepayment in the amount of $48,350,000.00;

b.    The unpaid interest in the aggregate amount of $3,228,842.02;

c.    The unpaid Administrative Fees in the aggregate amount of $91,999.30;

d.    The unpaid Default Interest in the aggregate amount of $105,590.89; and

e.    The attorneys' fees and other costs incurred by CFSI.

From and after July 1, 2016, the amounts due to CFSI as set forth in the foregoing subparagraphs b through e will continue to increase as set forth in the Prepayment Agreement.

102.    In sum, as of the date of this Complaint, HFCA owes CFSI the total amount of $51,776,432.21. This amount does not include the attorneys' fees incurred by CFSI, which, pursuant to the Prepayment Agreement, CFSI is entitled to collect from HFCA that it has incurred, and will incur, in maintaining this action.

## COUNT III
## UNJUST ENRICHMENT – PREPAYMENT AGREEMENT

103.    Plaintiffs restate and reallege all prior paragraphs of this Complaint as if fully set forth by this reference.

104.    When it advanced $52,350,000.00 to HFCA, CFSI conferred a benefit upon HFCA.

105.    HFCA knowingly accepted and retained the benefits conferred upon it by CFSI.

106.    Allowing HFCA to accept and retain these benefits without repaying CFSI would be unjust and inequitable.

107.    As a result of HFCA's actions and inactions, CFSI has been damaged in an amount of at least $48,350,000.00, which represents the outstanding principal balance, plus interest, costs and attorneys' fees as allowed by law.

## COUNT IV
## APPOINTMENT OF RECEIVER

108.    Plaintiffs restate and reallege all prior paragraphs of this Complaint as if fully set forth by this reference.

109.    US Bank has assigned the right to bring its claims under the Reimbursement Agreement to CFSI.

110.    Under Section 7.2(e) of the Reimbursement Agreement, HFCA has expressly consented to the appointment of a receiver to manage and control the Facility should HFCA fail to pay any amounts owing under the Reimbursement Agreement.

26

111.    HFCA owes $81,447,000.12 under the Reimbursement Agreement, and has failed and refused to pay that amount.

112.    Because HFCA is in default under the Reimbursement Agreement, Cargill is entitled to the appointment of a receiver to manage and control the Facility as consented to by HFCA. Cargill's remedy is also invoked pursuant to Fed. R. Civ. P. 66.

113.    Cargill and CFSI have valid claims for damages against HFCA in excess of $130,000,000.00 under the Reimbursement Agreement and Prepayment Agreement, collectively, including interest, costs and attorneys' fees as allowed by law.

114.    HFCA has permitted more than $18,000,000 in mechanic's liens to be filed against the Facility.

115.    HFCA is insolvent.

116.    HFCA has failed to make the Facility fully operational.

117.    The Facility contains numerous design defects that HFCA has failed to remedy.

118.    The Facility contains environmental defects that HFCA has failed to remedy.

119.    Because HFCA does not have the financial wherewithal to maintain the Facility in a safe condition, it is unable to operate the Facility in a safe manner.

120.    HFCA has demonstrated an inability to operate the Facility in an efficient manner.

121.    If HFCA remains in control of the Facility, the Facility cannot be brought into the condition necessary to operate in a safe and effective manner, and as a result, Cargill will suffer irreparable harm.

122.    Pursuant to the applicable contract provisions and Fed. R. Civ. P. 66, Cargill and CFSI are entitled to an order appointing a receiver to manage, control and liquidate the Facility.

**JURY DEMAND**

123.    Cargill and CFSI demand a trial by jury on all claims that may be so tried.

WHEREFORE, each of Cargill and CFSI prays for judgment in its favor and against HFCA as follows:

1.    Awarding Cargill a money judgment against HFCA in the amount of at least $81,447,000.12 or such other amount to be determined at trial, together with pre-judgment interest and an award of Cargill's costs, disbursements, and attorneys' fees incurred in this action;

2.    Awarding CFSI a money judgment against HFCA in the amount of $51,776,432.21 or such other amount to be determined at trial, together with interest and an award of Cargill's costs, disbursements, and attorneys' fees incurred in this action;

3.    Ordering the appointment of a receiver over HFCA, its assets and the Facility; and

4.    Such other and further relief as the Court deems just.

Dated this 25th day of July, 2016      **GRAY, PLANT, MOOTY,**
                                          **MOOTY & BENNETT, P.A**.

                                    */s/Samuel J.H. Sigelman*
                                    Kathryn J. Bergstrom (#0218431)
                                    Samuel J.H. Sigelman (#331089)
                                    DJ Ringquist (#0395856)
                                    500 IDS Center, 80 South 8th Street
                                    Minneapolis, MN 55402
                                    Office Phone: (612) 632-3000
                                    Direct Fax: (612) 632-4444

                                    **Attorneys for Cargill, Incorporated and**
                                    **Cargill Financial Services International, Inc.**