UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-2506(DSD/JSM)

Cargill, Incorporated, and
Cargill Financial Services
International, Inc.,

       Plaintiffs,

v.                                       **ORDER**

HF Chlor-Alkali, LLC,

       Defendant.

This matter is before the court upon the motion for a preliminary injunction by plaintiffs Cargill, Inc. and Cargill Financial Services International, Inc.[1] Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is denied.

**BACKGROUND**

Defendant HF Chlor-Alkali, LLC (HFCA) was formed in November 2012 to build and operate a chlor-alkali manufacturing facility that produces hydrochloric acid, caustic soda, and bleach. Compl. ¶ 10. Cargill assisted HFCA in obtaining $80 million in bond financing through the Iowa Finance Authority. Id. ¶ 12. As part of the bond financing agreement, U.S. Bank issued a letter of

---

[1] For purposes of this motion, the court will refer to plaintiffs collectively as "Cargill" unless a finer distinction is required.

credit, guaranteeing payment to the bond trustee, and HFCA agreed to reimburse U.S. Bank for payments made under the letter of credit (Reimbursement Agreement). Id. ¶¶ 15-17. Relatedly, Cargill agreed that it would purchase the rights and obligations of U.S. Bank under the Reimbursement Agreement if HFCA defaulted (Put Agreement). Id. ¶ 18. HFCA also obtained over $52 million in financing from Cargill Financial Services International, which it was obligated to repay with interest (Prepayment Agreement). Id. ¶ 35.

Cargill agreed with HFCA that it would purchase all of the caustic soda and hydrochloric acid produced by HFCA's facility (Chemical Supply Agreement), and supply HFCA with salt (Salt Agreement). Id. ¶¶ 34, 58.

Construction began in August 2013, and HFCA anticipated that the facility would be operational by January 2015. Id. ¶¶ 61-62. However, a tornado and the allegedly negligent conduct of HFCA's contractors delayed construction. Id. ¶ 62; Def.'s Opp'n Mem. at 8-9. The parties dispute who is ultimately responsible for the construction delays. In April 2015, HFCA attempted to speed progress by implementing recommendations made by a consulting firm. Cargill disputes that HFCA implemented those recommendations given the facility's ongoing problems. The facility began operating in November 2015, but the parties contest whether it is currently

operating at 28 or 50 percent of capacity.[2]  Compl. ¶ 66; Def.'s Opp'n Mem. at 15.

The facility has experienced subsequent and additional setbacks. In December 2015, a pipe ruptured spilling 30,000 gallons of hydrochloric acid, and a hydrochloric acid storage tank leaked due to improper installation. Compl. ¶¶ 68-69. Due to malfunctioning equipment, the facility released hydrochloric vapor into the atmosphere at least three times. Pls.' Supp. Mem. at 18.

HFCA has also experienced financial difficulties. On March 1, 2016, it failed to make a bond interest payment. Compl. ¶ 21. Under the letter of credit, U.S. Bank paid the bond interest payment, but HFCA did not reimburse U.S. Bank. Id. ¶ 23. HFCA also failed to pay quarterly fees to U.S. Bank in March and June. Id. ¶¶ 23-24. On July 15, U.S. Bank declared a default under the Reimbursement Agreement, causing the bond trustee to declare the total amount under the bond financing, $80,051,125.68, due immediately. Id. ¶ 28. U.S. Bank paid off the bonds pursuant to the letter of credit. Id. ¶ 30. On July 21, pursuant to the Put Agreement, Cargill paid U.S. Bank $81,447,000.12 in exchange for

---

[2] At oral argument, the court ordered the parties to provide, within the week, a status update concerning the facility's operations. In the updates, the parties disagree as to whether the facility is operating at capacity. Cargill insists that it is unable to obtain its requirements for hydrochloric acid or caustic soda. ECF No. 50 at 2. According to HFCA, however, the facility would be operating at 100 percent capacity but for Cargill's refusal to take the hydrochloric acid it contracted to purchase. ECF No. 51 at 1.

U.S. Bank's rights and remedies against HFCA under the Reimbursement Agreement. Id. ¶¶ 31-32. Cargill claims that HFCA owes in excess of $81,447,000.12 under the Reimbursement Agreement. Id. ¶ 33.

Cargill further alleges that HFCA defaulted under the Prepayment Agreement by failing to make a principal payment in June and quarterly interest payments in December, March, and June and, therefore, owes $51,776,432.21. Id. ¶¶ 40, 43, 102.

HFCA contends that Cargill contributed to the defaults by failing to pay for product and supply salt pursuant to the Chemical Supply and Salt Agreements. HFCA also alleges that its obligations under the Prepayment Agreement were suspended because of unexpected equipment malfunctions and construction delays.

On July 25, 2016, Cargill filed this suit alleging breach of contract under the Reimbursement and Prepayment Agreements and unjust enrichment under the Prepayment Agreement. Cargill now moves for a preliminary injunction, requesting the appointment of a receiver.

**DISCUSSION**

**I. Contractual Basis for Appointing a Receiver**

Cargill urges the court to appoint a receiver consistent with the parties' agreement. See Lichtenberger Decl. Ex. 4 § 7.2(e). Whether a contract can serve as the sole basis for appointing a receiver has not been decided by the Eighth Circuit. See United

4

States v. Cedar-Riverside Land Co., 592 F.2d 470, 472 n.6 (8th Cir. 1979) ("[W]e find it unnecessary to address the issue of whether a receiver was justified solely by contractual provisions."). The lower courts within this circuit are split on the question. Compare U.S. Bank, Nat'l Ass'n v. CB Settle Inn Ltd., 827 F. Supp. 2d 993, 998 (S.D. Iowa 2011) (finding a contractual provision sufficient to appoint a receiver) with PNC Bank Nat'l Ass'n v. Lee, No. 4:13-CV-1482, 2013 WL 5532693, at *2 (E.D. Mo. Oct. 7, 2013) (refusing to appoint a receiver despite a contract that provided otherwise).

The court finds it unnecessary to resolve this issue. Even if the court were to appoint a receiver solely on the basis of the contract, it would first have to conclude that a default, a condition precedent to the appointment of a receiver, has occurred. See Am. Bank & Trust Co. v. Bond Int'l Ltd., No. 06-CV-0317, 2006 WL 2385309, at *7 (N.D. Okla. Aug. 17, 2006) (enforcing an appointment of receiver provision because it found defendants were in default). As discussed below, it is unclear whether HFCA defaulted on the Prepayment and Reimbursement Agreements. Therefore, the court will not appoint a receiver solely on the basis of the contract.[3]

---

[3] The court does not foreclose the possibility that a receiver could be appointed pursuant to the terms of the contract if the court found, on a more developed record, that HFCA is in default.

**II. Preliminary Injunction**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the likelihood of the movant's ultimate success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party, and (4) the public interest. <u>Dataphase Sys., Inc. v. C.L. Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is determinative. <u>Id.</u> at 113. Rather, the court is concerned with whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." <u>Id.</u>

**A. Likelihood of Success on the Merits**

Cargill argues it is likely to succeed on the breach of contract claims because HFCA inexcusably defaulted on numerous agreements. The court is not convinced, however, that HFCA has no valid defenses. HFCA invokes the Prepayment Agreement's force majeure provision. Kunkel Aff. ¶¶ 16-17. Cargill responds that this provision does not apply to the Reimbursement Agreement, but does not challenge its applicability as to the Prepayment Agreement. Also, HFCA argues that its alleged default under the

6

Reimbursement Agreement was due to Cargill's refusal to pay for freight costs and delivered product under the Chemical Supply Agreement. A party's interference with a contract is a valid defense to a breach of contract claim. See Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984) ("Generally, contract performance is excused when it is hindered or rendered impossible by the other party.").

Importantly, Cargill largely leaves these claims unaddressed, only noting that Cargill is not currently in arrears in making payment under the Chemical Supply Agreement. ECF No. 50 at 2. HFCA has provided the affidavits of Timothy Harris and Charles Kunkel, who both testify that Cargill breached its obligations under the Chemical Supply and Salt Agreements. Harris Aff. ¶¶ 37-42; Kunkel Aff. ¶¶ 22-27. In contrast, Cargill has provided little evidence supporting its contention. Further, even if Cargill is not currently in arrears, this does not address HFCA's contention that Cargill previously breached the Chemical Supply Agreement. At most, Cargill has raised a serious dispute of fact, but has not met its burden of showing the likelihood of success on the merits. Therefore, this factor weights against granting an injunction. See Evening News Publ'g Co. v. Allies Newspaper Carriers, 149 F. Supp. 460, 463 (D. N.J. 1957) ("[I]n weighing an application for preliminary injunction, to doubt is to deny."); see also Lexis-Nexis v. Beer, 41 F. Supp. 2d 950, 959 (D. Minn. 1999) (denying

injunctive relief given the "contradictory nature of the evidence").

**B. Irreparable Harm**

"The basis of injunctive relief in the federal courts has always been irreparable harm and [the] inadequacy of legal remedies." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (per curiam) (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). Courts should "consider 'traditional equitable principles' when deciding whether to grant injunctive relief, including whether the plaintiff has shown that 'remedies available at law, such as monetary damages, are inadequate to compensate' him." Calleros v. FSI Int'l, Inc., 892 F. Supp. 2d 1163, 1172 (D. Minn. 2012) (quoting eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391-94 (2006)). Failure to show irreparable harm is "an independently sufficient ground upon which to deny" an injunction. Watkins, 346 F.3d at 844.

Cargill argues that the facility is in imminent danger of diminishing in value because HFCA will continue to mismanage the facility and lacks the resources to maintain it during litigation. HFCA disputes this, stating that the facility is currently

operating at 50 percent of capacity, is close to running at 100 percent of capacity, and has positive cash flow. Ford Aff. ¶¶ 85, 93; Kunkel Aff. ¶ 56. Because there is a substantial question as to whether and to what extent the facility will lose value over the course of litigation, the court cannot conclude that irreparable harm will occur absent injunctive relief.

Cargill insists that "when property is at risk, there is no less drastic legal remedy that exists other than to appoint a receiver." Pls.' Supp. Mem. at 32. The court, however, will not appoint a receiver simply because property is at risk; rather, it must consider whether legal remedies are inadequate. Aviation Supply Corp. v R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. 1993). Even assuming a loss of the facility's value during litigation, Cargill has made no showing that monetary damages are inadequate. As a result, this factor strongly weighs against granting an injunction.

### C. Balance of Harms

Cargill argues that the harm it would suffer in the absence of relief outweighs any harm HFCA would suffer, especially given HFCA's agreement to appoint a receiver. HFCA responds that a receiver would impede facility operations.

As already discussed, the court is not persuaded that Cargill will be irreparably harmed in the absence of a receiver. Strikingly, Cargill characterizes the harm it would suffer as

"potential." Pls.' Supp. Mem. at 26. Injunctive relief is not appropriate for "potential" harm. See Internet Inc. v. Tensar Polytechnologies, Inc., No. 05-CV-317, 2005 WL 2453170, at *5 (D. Minn. Oct. 3, 2005) ("Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a clear showing of immediate irreparable injury.") (citation and internal quotation marks omitted). On the other hand, appointing a receiver would deprive HFCA of control over the facility into which it has invested millions of dollars. Because HFCA's harm outweighs Cargill's "potential" harm, this factor weighs against granting an injunction.

**D. Public Interest**

Cargill argues that enforcing the contract's receiver provision is in the public interest. The court agrees that public policy favors the enforcement of contracts. Benfield, Inc. v. Moline, 351 F. Supp. 2d 911, 919 (D. Minn. 2004). It is not in the public interest, however, to reward a party who has interfered with the other party's performance. As previously discussed, HFCA has provided some evidence that Cargill impeded HFCA's performance by breaching the Chemical Supply Agreement. On the current record, the court is unable to determine whether the public interest would be served or harmed by the appointment of a receiver. Therefore, the court gives this factor no weight in its decision.

Based on an analysis of the above factors, the court will not appoint a receiver.[4]

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that plaintiffs' motion for a preliminary injunction in the form of the appointment of a receiver [ECF No. 8] is denied.

Dated: September 12, 2016

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court

---

[4] Although Cargill seeks the appointment of a receiver via a preliminary injunction, these forms of relief are usually sought separately. Regardless, the equitable factors that a court considers in appointing a receiver are similar to those for a preliminary injunction. See Aviation Supply Corp., 999 F.2d at 316-17. Cargill does not meet the standard for the appointment of a receiver for the same reasons it does not merit a preliminary injunction.