```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 16-2506(DSD/JSM)
```

Cargill, Incorporated, and
Cargill Financial Services
International, Inc.,

      Plaintiffs,

v.                                                            **ORDER**

HF Chlor-Alkali, LLC,

      Defendant.


HF Chlor-Alkali, LLC,

      Plaintiff,

v.

Cargill, Incorporation and
U.S. Bank National Association,

      Defendants.

---

    John F. Baughman, Esq. and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 and Kathryn J. Bergstrom, Esq. and Gray Plant Mooty, 80 South 8th Street, Suite 500, Minneapolis, MN 55402, counsel for plaintiffs.

    Alejandro H. Cruz, Esq., Elena Steiger Reich, Esq., Peter C. Harvey, Esq. and Patterson Belknap Webb & Tyler LLP, 1133 Avenue of Americas, New York, NY 10036 and Tracy J. Van Steenburgh, Esq. and Nilan Johnson Lewis P.A., 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, counsel for defendant HF Chlor-Alkali, LLC.

    Peter D. Stiteler, Esq. and Christine N. Lindblad, Esq. and Fox Rothschild LLP, 222 South Ninth Street, Suite 2000, Minneapolis, MN 55402, counsel for third-party defendant U.S. Bank National Association.

This matter is before the court upon the motion to dismiss counterclaim by plaintiffs Cargill, Inc. and Cargill Financial Services International, Inc. (CFSI),[1] the motion to dismiss third-party complaint by third-party defendant U.S. Bank National Association, and the motion for a preliminary injunction by defendant HF Chlor-Alkali, LLC.  Based on a review of the file, record, and proceedings herein, and for the following reasons, the motions to dismiss are granted and the motion for a preliminary injunction is denied.

## BACKGROUND

Defendant HF Chlor-Alkali, LLC (HFCA) was formed in November 2012 to build and operate a chlor-alkali manufacturing facility that produces hydrochloric acid, caustic soda, and bleach. Compl. ¶ 10.  Cargill assisted HFCA in obtaining $80 million in bond financing through the Iowa Finance Authority. Id. ¶ 12.  As part of the bond financing agreement, U.S. Bank issued a letter of credit, guaranteeing payment to the bond trustee, and HFCA agreed to reimburse U.S. Bank for payments made under the letter of credit (Reimbursement Agreement).  Id. ¶¶ 15-17.  Relatedly, Cargill agreed that it would purchase the rights and obligations of U.S. Bank under the Reimbursement Agreement if HFCA defaulted (Put

---

[1] For purposes of this motion, the court will refer to plaintiffs collectively as "Cargill" unless a finer distinction is required.

Agreement).  Id. ¶ 18.  HFCA also obtained over $52 million in financing from CFSI, which it was obligated to repay with interest (Prepayment Agreement).  Id. ¶ 35.  The Prepayment Agreement provides that CFSI shall "receive any and all amounts due under this Agreement from Cargill, Incorporated on behalf of [HFCA] via the Assignment Agreement."  Harvey Decl. Ex. 1 § 2.08, ECF No. 87-1.  Under the Assignment Agreement, HFCA agreed to assign a portion of its rights to payment from Cargill under the Chemical Supply Agreement.  Id. Ex. 2 at 1.  In the Chemical Supply Agreement, Cargill agreed that it would purchase all of the caustic soda and hydrochloric acid produced by HFCA's facility.  Compl. ¶ 34.

On March 1, 2016, HFCA failed to make a bond interest payment. Id. ¶ 21.  Under the letter of credit, U.S. Bank made the bond interest payment, but HFCA did not reimburse U.S. Bank.  Id. ¶ 23. HFCA also failed to pay quarterly fees to U.S. Bank in March and June.  Id. ¶¶ 23-24.  On July 15, U.S. Bank declared default under the Reimbursement Agreement, causing the bond trustee to declare the total amount under the bond financing, $80,051,125.68, due immediately.  Id. ¶ 28.  U.S. Bank paid off the bonds pursuant to the letter of credit.  Id. ¶ 30.  On July 21, pursuant to the Put Agreement, Cargill paid U.S. Bank $81,447,000.12 in exchange for U.S. Bank's rights and remedies against HFCA under the Reimbursement Agreement.  Id. ¶¶ 31-32.  Cargill now claims that HFCA owes in excess of $81,447,000.12 under the Reimbursement

Agreement. Id. ¶ 33. Cargill further claims that HFCA defaulted under the Prepayment Agreement by failing to make a principal payment in June and quarterly interest payments in December, March, and June and, therefore, owes an additional $51,776,432.21. Id. ¶¶ 40, 43, 102.

On July 25, 2016, Cargill filed this suit alleging breach of contract under the Reimbursement and Prepayment Agreements and unjust enrichment under the Prepayment Agreement. Shortly thereafter, Cargill moved for a preliminary injunction in the form of an appointment of receiver, which the court denied on September 12. See ECF No. 60.

In its answer, HFCA asserts a counterclaim against Cargill for tortiously interfering with the Reimbursement Agreement. See Answer ¶¶ 269-75, ECF No. 22. HFCA, as third-party plaintiff, also brings claims against U.S. Bank for: (1) aiding and abetting Cargill in its tortious interference with the Reimbursement Agreement; (2) civil conspiracy; and (3) breach of the implied covenant of good faith and fair dealing. See Id. ¶¶ 276-91. The answer also asserts a number of affirmative defenses including that the force majeure provisions of the parties' agreements suspended HFCA's obligations to make payments under the Reimbursement and Prepayment Agreements. Id. ¶¶ 124-43. Subsequently, U.S. Bank and Cargill brought the instant motions to dismiss the third-party claims and counterclaim.

On October 28, Cargill advised HFCA that, pursuant to the Prepayment and Assignment Agreements, it would divert funds owed to HFCA under the Chemical Supply Agreement to CFSI. CFSI would apply those funds to the balance owed to it by HFCA under the Prepayment Agreement. In response, HFCA filed this motion for a preliminary injunction seeking to: (1) enjoin Cargill from diverting funds pursuant to the Prepayment and Assignment Agreements and (2) require Cargill to return previously diverted funds to HFCA.

**DISCUSSION**

**I. Motion to Dismiss**

    **A.  Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a

formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the court properly considers the Reimbursement Agreement.

**B.  Tortious Interference with Contract**

To establish a tortious interference with contract claim, HFCA must show (1) the existence of a contract; (2) that Cargill knew about the contract; (3) that Cargill intentionally procured HFCA's breach of the contract without justification; and (4) damages resulting from the breach. Cmty. Ins. Agency, Inc. v. Kemper, 426 N.W.2d 471, 474 (Minn Ct. App. 1988).

Both Cargill and U.S. Bank argue that HFCA has improperly converted a breach of contract claim into a tortious interference claim, and the court agrees. In Minnesota, the basis of a tort claim cannot be the breach of a contract. Wild v. Rariq, 234 N.W.2d 775, 789 (Minn. 1975); see also McNeill & Assocs., Inc. v. ITT Life Ins. Corp., 446 N.W.2d 181, 185 (Minn. Ct. App. 1989)("When the gravamen of the complaint is the breach of

contract, the plaintiff may not recover tort damages."). A breach of contract cannot become a tort even when a party breaches in bad-faith. McNeill, 446 N.W.2d at 185. A tort claim may be asserted in a breach of contract action only in "exceptional cases where ... the breach of contract constitutes or is accompanied by an independent tort." Wild, 234 N.W.2d at 789. In determining whether a tort may accompany a breach of contract claim, "the test is whether a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself." Berger v. Nationstar Mortg. LLC, 118 F. Supp. 3d. 1121, 1126 (D. Minn. 2015).

Here, HFCA alleges that Cargill tortiously interfered with the Reimbursement Agreement by "unjustifiably depriving HFCA of the funds necessary to pay fees due to U.S. Bank under the [Reimbursement] Agreement." Answer ¶ 272. Specifically, Cargill allegedly refused to pay HFCA amounts due under the chemical supply agreement for product and freight charges and failed to provide salt to HFCA pursuant to a salt supply agreement. Id. ¶ 254(a)-(c). Because Cargill would have no obligation to pay or supply salt to HFCA absent those contracts, the alleged failure to do so cannot serve as the basis for a tortious interference claim. See Constr. Sys., Inc. v. Gen. Cas. Co. of Wis., No. CIV 09-3697 RHK/JJG, 2011 WL 3625066, at *10 (D. Minn. Aug. 17, 2011) (dismissing tortious interference claim based on a breach of duty

7

arising out of a contract).

HFCA argues that its tortious interference claim is proper because there is no requirement that the underlying conduct is independently tortious. But HFCA confuses the issue; the question is not whether the conduct procuring the breach be independently tortious or illegal, it is whether a tortious interference claim can be entirely based on conduct that is wrongful only because of the parties' contractual relationship. As discussed above, the law is clear that it cannot.

HFCA also alleges that Cargill interfered with the Reimbursement Agreement by instructing U.S. Bank to declare a default. Answer ¶ 254(d). Even assuming this is true, HFCA does not explain how Cargill's action caused its failure to make payments to U.S. Bank. Indeed, U.S. Bank's decision to exercise its rights under the contract, regardless of motive or influence, was in response to HFCA's failure to make payments due under the Reimbursement Agreement. Therefore, Cargill's alleged conduct cannot serve as the basis of a tortious interference claim. See Nat'l Ass'n of Review Appraisers & Mortg. Underwriters, Inc. v. Appraisal Found., 64 F.3d 1130, 1137 (8th Cir.) ("[T]he [plainitff] must show that ... but for the [defendant's] actions [the plaintiff] would have received the benefits of [the contract]."). As a result, the court must dismiss the tortious interference counter-claim against Cargill.

**B.   Aiding and Abetting and Civil Conspiracy**

Because the court must dismiss the interference with contract claim against Cargill, there is no basis on which to maintain the aiding and abetting claim against U.S. Bank.  Therefore, this claim must also be dismissed.

HFCA's civil conspiracy claim likewise fails a a matter of law.  There must be underlying tort to support a civil conspiracy claim.  <u>D.A.B. v. Brown</u>, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997). HFCA bases its civil conspiracy claim against U.S. Bank on its tortious interference claim.  Answer ¶¶ 282-83.  Because the tortious interference claim has been dismissed, the civil conspiracy claim against U.S. Bank must be dismissed as well.

**C.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

Every contract, under Minnesota law, "includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract."  <u>In re Hennepin Cty. 1986 Recycling Bond Litig.</u>, 540 N.W.2d 494, 502 (Minn. 1995) (internal quotation marks and citation omitted).  A party breaches the implied covenant when it acts in bad faith, that is, when it "refus[es] to fulfill some duty or contractual obligation based on an ulterior motive."  <u>Residential Funding Co. v. Terrace Mortg. Co.</u>, 725 F.3d 910, 918 (8th Cir. 2013) (internal quotation marks omitted) (quoting <u>Sterling Capital Advisors, Inc. v. Herzog</u>, 575 N.W.2d 121, 125 (Minn. Ct. App.

1998)); see also Team Nursing Servs. v. Evangelical Lutheran Good Samaritan Soc'y, 433 F.3d 637, 641-42 ("[T]he implied covenant of good faith and fair dealing governs the parties' performance and prohibits a party from failing to perform for the purpose of thwarting the party's rights under the contract."). A party does not act in bad faith when it exercises its legal and contractual rights. Residential Funding, 725 F.3d at 918; Herzog, 575 N.W.2d at 125.

Here, the parties do not dispute that HFCA failed to make payments under the Reimbursement Agreement, nor do they dispute that U.S. Bank had the contractual right to consider those failures a default.[2] HFCA argues that U.S. Bank acted in bad faith because it allowed Cargill "to dictate whether and when U.S. Bank would call a default of the Agreement" which "unjustifiably hindered HFCA's performance of the contract." Answer ¶ 288. Even assuming that Cargill advised U.S. Bank to "call a default," HFCA pleads no facts supporting its contention that such conduct hindered its performance of the contract. Indeed, as discussed above, U.S. Bank exercised its contractual rights because HFCA failed to meet its payment obligations - the declaration of a default did not cause HFCA to miss a payment. To the contrary, HFCA missed payments thus causing U.S. Bank to declare default.

---

[2] The court makes no finding on the merits of HFCA's argument that its obligation to make payments under the contract was suspended.

HFCA contends that "U.S. Bank previously provided HFCA time to cure any past potential defaults" and, therefore, breached its duty of good faith in changing its prior course of dealing. <u>Id.</u> ¶ 290; Def.'s Opp'n Mem. at 32. Again, HFCA fails to plead any facts showing how this unjustifiably hindered its performance under the Reimbursement Agreement. Further, U.S. Bank did not act in bad faith by declaring default even though it had previously chosen not to do so. The agreement specifically states that a delay in exercising rights does not waive those rights. <u>See</u> Lichtenberger Decl. Ex 4 §§ 8.1-8.2, ECF 14-4.

As a result, HFCA has failed to plead facts giving rise to a claim for a breach of the implied covenant of good faith and fair dealing, and the court dismisses that claim.

## II. Preliminary Injunction

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the likelihood of the movant's ultimate success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party; and (4) the public interest. <u>Dataphase Sys., Inc. v. C.L. Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single

factor is determinative. Id. at 113. Rather, the court is concerned with whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id.

**A.   Irreparable Harm**

HFCA has not met its burden of establishing the need for the extraordinary remedy of a preliminary injunction. Most notably, it has not established the certainty of irreparable harm. "The basis of injunctive relief in the federal courts has always been irreparable harm and [the] inadequacy of legal remedies." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (per curiam) (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). Courts should "consider 'traditional equitable principles' when deciding whether to grant injunctive relief, including whether the plaintiff has shown that 'remedies available at law, such as monetary damages, are inadequate to compensate' him." Calleros v. FSI Int'l, Inc., 892 F. Supp. 2d 1163, 1172 (D. Minn. 2012) (quoting eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391-94 (2006)). Failure to show irreparable harm is "an independently sufficient ground upon which to deny" an injunction. Watkins, 346 F.3d at

844.

HFCA argues that, if Cargill continues to divert payments to CFSI, it "likely will be unable to continue operating." Further, it claims that a facility shutdown would lead to employee layoffs. Although Cargill's actions under the Prepayment and Assignment Agreements have put HFCA in a difficult financial position, HFCA has not shown that such harms cannot be adequately addressed by monetary damages. If HFCA believes that Cargill is withholding payment in violation of the contract, it is free to assert a breach of contract claim seeking money damages. Indeed, the relief that HFCA seeks via this motion is entirely monetary.

HFCA responds that it will suffer the loss of intangible assets such as reputation and goodwill, which monetary damages cannot adequately compensate. Even assuming that injunctive relief is an appropriate remedy for such losses, HFCA fails to cite any part of the record in support of its contention. Likewise, although there is evidence supporting what might happen if employees are laid off, there is no evidence indicating the probability or extent of the layoffs. See Harris Aff. ¶ 15 ("Should HFCA be forced to conduct layoffs ...."). The court cannot grant the extraordinary remedy of injunctive relief based on pure speculation of possible harms. See Chlorine Inst., Inc. v. Soo Line R.R., 792 F.3d 903, 915-16 (8th Cir. 2015) (citation omitted and internal quotation marks omitted) ("Merely

13

demonstrating the possibility of harm is not enough."); S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 779 (8th Cir. 2012) (citation omitted) ("Speculative harm does not support a preliminary injunction."). Therefore, this factor weighs against granting a preliminary injunction.

### B.   Likelihood of Success on the Merits

HFCA argues that it will likely succeed on the merits because the force majeure provision of the Prepayment Agreement suspended its obligation to make payments. It is far from clear, on the current record, whether HFCA's defense has merit. Therefore, this factor also weighs against granting an injunction. See Evening News Publ'g Co. v. Allies Newspaper Carriers, 149 F. Supp. 460, 463 (D.N.J. 1957) ("[I]n weighing an application for preliminary injunction, to doubt is to deny."); see also Lexis-Nexis v. Beer, 41 F. Supp. 2d 950, 959 (D. Minn. 1999) (denying injunctive relief given the "contradictory nature of the evidence").

### C.   Balance of Harms

HFCA argues that the balance of harm weighs in favor of granting a preliminary injunction, citing the same harms discussed above. Again, many of those harms, such as employee layoffs and loss of goodwill and reputation, are speculative. But, even if the HFCA is not forced to close the facility, it is likely that it will suffer some financial harm in the absence of injunctive relief. In contrast, if the court grants the preliminary injunction, Cargill

14

will be unable to enforce its remedies under the Prepayment Agreement. Under these circumstances, the balance of harms favors neither party. Because HFCA has not shown that the balance of harms tips in its favor, this factor weighs against granting a preliminary injunction.

### D. Public Interest

HFCA argues that the public interest weighs in favor of granting an injunction because: (1) Cargill's actions under the prepayment agreement are an attempt to "circumvent" this court's jurisdiction; (2) "there is a public interest in allowing smaller businesses who lack the resources of their more powerful adversaries to have their day in court"; and (3) the absence of an injunction will lead to economic hardship for HFCA employees and their families. Def.'s Supp. Mem. at 25, ECF No. 84. The court disagrees.

First, a party does not circumvent the jurisdiction of a court when it chooses to exercise its bargained-for contractual rights and remedies, and HFCA cites no case holding the contrary. Indeed, there is a public interest in enforcing contracts. <u>Benfield, Inc. v. Moline</u>, 351 F. Supp. 2d 911, 919 (D. Minn. 2004). Second, the public interest lies in the fair and just outcome of litigation - not in favoring one party over another simply because of their perceived relative strength. The court does find, however, that there is a public interest in maintaining stable employment. That

interest, however, must be balanced against the competing interest of enforcing contracts. As a result, this factor weighs neither for nor against granting an injunction. As a result, based on a balancing of the four <u>Dataphase</u> factors, a preliminary injunction is not warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for a preliminary injunction [ECF No. 83] is denied;

2. Cargill's motion to dismiss counterclaim [ECF No. 56] is granted;

3. U.S. Bank's motion to dismiss [ECF No. 46] is granted; and

4. Defendant's third-party complaint against U.S. Bank is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 15, 2016.

<u>s/David S. Doty</u>
David S. Doty, Judge
United States District Court
